UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRAWFORD HOUSE FOUNDATION

Plaintiff

v.

LUCIAN MIRON MANU, an individual, and
JOANNA FORSEA, an individual,

Defendants.

_____/

## PLAINTIFF CRAWFORD HOUSE FOUNDATION'S MEMORANDUM OF LAW AND MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT

By: /s/Moises A. Saltiel
Moisés A Saltiel, Esq.
Florida Bar No. 109954
Saltiel Law Group
Attorney for Plaintiff
201 Alhambra Cir, Ste 1050
Coral Gables, FL 33134
(305) 735-6565
Service@SaltielLawGroup.com

# Table of Contents

| | Page |
|---|---|
| 28 U.S.C. § 1963 | 5 |
| Insurance Corp. of America v. Department of Ins., 655 F. Supp. 1456 (S.D. Fla. 1987). | 5 |
| Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987). | 5 |
| CPLR § 5303 | 5, 7 |
| Abu Dhabi Comm. Bank PJSC v. Saad Trading, Contracting and Fin. Servs. Co., 986 N.Y.S.2d 454, 457 (1st Dep't 2014) | 5 |
| CIBC Mellon Trust Co. v. Mora Hotel Corp., 100 N.Y.2d 215, 221 (2003) | 5 |
| Sung Hwan Co., Ltd. v. Rite Aid Corp., 7 N.Y.3d, 78, 82 (2006) | 6 |
| CPLR § 3213 | 6 |
| CPLR § 5304 | 6 |
| Albania BEG Ambient Sh.p.k. v. Enel S.p.A., 160 A.D.3d 93, 99 (1st Dep't 2018) | 6 |
| 28 U.S.C. § 1332(a) | 6 |
| S.C Chimexim S.A. v. Velco Entreprises Ltd., 36 F. Supp.2d 206, 214 (S.D.N.Y. 1999) | 8 |

Plaintiff, Crawford House Foundation, by and through the undersigned counsel respectfully submits this Memorandum of Law and Motion for Summary Judgment in Lieu of Complaint to request that this court convert the foreign judgment that Plaintiff Crawford House Foundation obtained against Defendants Lucian Miron Manu, and Joanna Forsea in Romania, into an enforceable judgment in the United States.

## PRELIMINARY STATEMENT

This is a straightforward matter involving the recognition of a foreign judgment obtained in Bucharest, Romania in the Bucharest Tribunal.[1] *See* **Exhibit A**. The Bucharest Tribunal entered an order providing that the statement of claim filed by Crawford House Foundation is granted and ordered the Defendants as follows:

> To order to the debtors to pay the creditor-claimant, within 30 days of communication of this decision, the amount of EUR 493,834.29 of which the amount of EUR 90,990.25 represents the value of the outstanding tuition fees for the years 2011-2012 and 2012-2013, respectively, and the amount of EUR 402,844.04 represents late penalties, in the RON equivalent at the NBR exchange rate applicable on the payment date.

The Bucharest Tribunal is a legitimate foreign decision-making body, and the judgment entered against Defendants is a valid judgment. For the reasons set forth below, this Court should recognize and enforce the Bucharest Tribunal's final order.

## BACKGROUND

### The Parties

Plaintiff, Crawford House Foundation, is foreign corporation organized under the laws of Romania. Crawford House Foundation organized the British School of Bucharest in Romania and offers a variety of academic programs for children between the ages of 2 to 18. *See* Declaration of Plaintiff attached hereto as **Exhibit "B."**

---

[1] The main court in Bucharest, Romania, is called the "Tribunalul București" in Romanian, which translates to the "Bucharest Tribunal" in English. (cite)

Defendants, Joanna Forsea and Lucian Miron Manu, under information and belief, were residents of Bucharest in 2011 through 2013 and are residents on Nassau County as of the date of this filing. Ms. Forsea and Mr. Manu are the parents of three children that attended the Crawford House Foundation academy in Bucharest for two consecutive school years.

As the provider of the three children, February 14, 2011, Defendant Joanna Forsea executed three applications for the 2011-2012 school year, and applications for 2012-2013 school year, one for each child of the Defendants. The total amount of the tuition fees was $99,083.83. The Defendants were issued invoices in 2015, and have recognized the debt by paying small amounts to Plaintiff. In October 2016, January 2017, April 2017. After taking the small payments into consideration, the total amount owed by Defendants is outlined in the table below.

**The Romanian Proceedings**

On or around December 7, 2018, Plaintiff filed a claim against Defendants in the Bucharest Tribunal, requesting a judgment for payment of the unpaid tuition and late fees. Plaintiff requested EUR 493, 834.29, that includes the outstanding tuition fees and the calculated penalties pursuant to article 13 of the Financial Framework and Enrollment conditions (the "Agreement").

Following a trial on the merits of the dispute based on the available evidence, the court made a finding that the Plaintiff performed under the agreements and providing schooling service to the three children of the Defendants for school years of 2011-2012 and 2012-2013.

The court additionally determined that the Defendants were aware of the debt, were duly served for the Romanian proceedings, neglected to settle the debt, and omitted to submit a statement of defense. Moreover, the court confirmed the debt's liquidation according to the relevant procedural regulations, and concluded that the 0.2% daily late fees imposed fell within the legally permissible bounds in Romania. See Romanian Court page 6.

**Legal Standard**

28 U.S.C. § 1963 Section allows for the registration of judgments from other federal districts or from state courts within the United States. "A judgment in an action for the recovery of money or property . . . may be registered by filing a certified copy of the judgment in any other district . . ." While it does not explicitly mention foreign judgments, federal courts have interpreted this statute to apply to foreign judgments as well. Insurance Corp. of America v. Department of Ins., 655 F. Supp. 1456 (S.D. Fla. 1987).

Federal courts commonly extend comity to enforce foreign judgments whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of citizens or violate domestic public policy. Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987).

CPLR § 5303 governs "recognition" and "enforcement" of foreign country monetary judgments. It states, "[e]xcept as is otherwise provided in section [5304] [], a court of this state shall recognize a foreign country judgment [ ] as conclusive between the parties to the extent that it grants or denies recovery of a sum of money." CPLR § 5303. "New York has traditionally been a generous forum in which to enforce judgments for money damages by foreign courts." Abu Dhabi Comm. Bank PJSC v. Saad Trading, Contracting and Fin. Servs. Co., 986 N.Y.S.2d 454, 457 (1st Dep't 2014); see CIBC Mellon Trust Co. v. Mora Hotel Corp., 100 N.Y.2d 215, 221 (2003) ("Article 53 was designed . . . to promote the efficient enforcement of New York judgments abroad by assuring foreign jurisdictions that their judgments would receive streamlined enforcement here."). New York courts recognize and enforce such judgments "[a]bsent some showing of fraud in the procurement of the foreign country judgment or that recognition of the judgment would do violence to some strong public policy of this State." Sung Hwan Co., Ltd. v. Rite Aid Corp., 7 N.Y.3d, 78, 82 (2006). In seeking to enforce a foreign judgment, New York law

allows a plaintiff to proceed by way of a motion for summary judgment in lieu of a complaint. *See* CPLR §§ 3213 and 5303. CPLR § 5304 sets forth the exceptions for recognition and enforcement of a foreign judgment, which are discussed below. The party resisting recognition of a foreign judgment bears the burden of establishing that a basis for non-recognition under CPLR § 5304 exists. CPLR § 5304(c). Once it is established that none of the exceptions of CPLR § 5304 are met, "the foreign judgment should be enforced in New York under well-settled comity principles without microscopic analysis of the underlying proceeding." Abu Dhabi Comm. Bank, 986 N.Y.S.2d at 459 (recognizing United Kingdom judgment); Albania BEG Ambient Sh.p.k. v. Enel S.p.A., 160 A.D.3d 93, 99 (1st Dep't 2018) (recognizing Albanian judgment)

## ARGUMENT

a. **This court has jurisdiction over this matter.**

This Court's diversity jurisdiction is invoked under 28 U.S.C. § 1332(a), as the case involves a dispute between a citizen of a State and a citizen of a foreign nation, with the amount in controversy exceeding $75,000. As per 28 U.S.C. § 1332(a), "The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and cost, and between - (2) citizens of a State and citizens or subjects of a foreign state."

The Plaintiff is a citizen of a foreign country, Romania, Bucharest, and the Defendant is a citizen of New York. The parties, therefore, fulfil the citizenship requirement. Plaintiff seeks recognition of a money judgment in the amount of more than EUR $400,000.00. The amount in controversy is, therefore, greater than $75,000. This court therefore has jurisdiction pursuant to 28 U.S.C. § 1332.

### b.     The Judgment Is Enforceable Under New York State Law.

The Judgment is enforceable pursuant to CPLR § 5303(a), and none of the exceptions that could cause for the denial of recognition of the Judgment apply. CPLR § 5304(a) provides three "[g]rounds for non-recognition" of a foreign judgment: (1) the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) the foreign court did not have personal jurisdiction over the defendant; or (3) the foreign court did not have jurisdiction over the subject matter. CPLR 5304(b) states nine "[o]ther grounds for non-recognition": (1) the defendants in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; (2) the judgment was obtained by fraud; (3) the cause of action on which the judgment is based is repugnant to the public policy of this state; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceeding in court; (6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; (7) the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering courts with respect to the judgment; (8) the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process; or (9) the cause of a defamation judgment obtained in a jurisdiction outside the United States. CPLR 5304(b). Where none of the exceptions of CPLR §§ 5304(a) or (b) applies, enforcement of the foreign judgment is proper. See e.g., <u>Abu Dhabi Comm. Bank</u>, 986 N.Y.S.2d at 457-58. Here, none of the permissible bases for rejection of the Judgment are applicable.

### c. The Bucharest Tribunal Is an Impartial Tribunal with Procedures That Comport With The Requirements Of Due Process

The materials submitted to the Bucharest Tribunal as well as the Bucharest Tribunal's own process to determine the case on the materials and testimony before it demonstrate that the Romanian judicial system comports with the requirements of due process. Further, Defendants were provided with notice of the proceedings, were afforded an opportunity to be heard but failed to appear.

In 1992, The United States entered into a trade relations treaty with Romania which provided that:

> '[n]ationals and companies of either [the United States or Romania] shall be accorded national treatment with respect to access to all courts and administrative bodies in the territory of the other [country], as plaintiffs, defendants or otherwise. They shall not claim or enjoy immunity from suit or execution of judgment, proceedings for the recognition and enforcement of arbitral awards, or other liability in the territory [of either country] with respect to commercial transactions.'

The United States' willingness to recognize Romania's judicial system is evident in the language of the trade agreement." S.C Chimexim S.A. v. Velco Entreprises Ltd., 36 F. Supp.2d 206, 214 (S.D.N.Y. 1999).

## CONCLUSION

For the foregoing reasons, Plaintiff, respectfully requests that this Court grant this motion to enforce the Judgment and enter judgment in favor of Plaintiff in the amount stated in the Bucharest Order plus the applicable statutory interest, and attorneys fees.

WHEREFORE, Plaintiff CRAWFORD HOUSE FOUNDATION, respectfully requests that this Honorable Court grant the relief requested herein together with such further relief this Court deems just and equitable.

By: */s/Moises A. Saltiel*
Moisés A Saltiel, Esq.
Florida Bar No. 109954
Saltiel Law Group
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court using the ECF Filing Portal together with a Notice of Filing in Lieu of Complaint and Declaration in Support on this 11th day of June, 2024.

By: */s/Moises A. Saltiel*
Moisés A Saltiel, Esq.
Florida Bar No. 109954
Saltiel Law Group
Attorney for Plaintiff
201 Alhambra Cir, Ste 1050
Coral Gables, FL 33134
(305) 735-6565
Service@SaltielLawGroup.com